# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NICHOLAS W. PARKS,                    *

      Plaintiff,                    *

v.                                    *          Civ. No. DLB-24-2214

PA KEVIN JHONSON, *et al.*,            *

      Defendants.                    *

## MEMORANDUM OPINION

Nicholas W. Parks, who is proceeding without counsel, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Col. Thomas Kimball, Lt. Deniece Davis, Sgt. Andrea Russell, Sgt. Richard Elliott, Officer Richard Blevens, Officer Shalisa Hutt, and former Warden Ruth Colbourne ("county defendants") as well as Kevin Jhonson, Nurse Melissa, and Jessica ("medical defendants"), alleging they violated his constitutional rights while he was a pretrial detainee at Wicomico County Detention Center ("WCDC").[1] Parks alleges he was housed in unconstitutional conditions, subjected to excessive force, and denied medical care and that prison officials failed to protect him from an assault by another inmate. He also brings state law claims for assault and battery and other unspecified state law tort claims.

In response, the county defendants moved to dismiss the complaint or for summary judgment. ECF 9. The Court notified Parks that if he did not respond to the motion, his case could be dismissed or judgment could be entered against him. ECF 10. Parks has not filed any response to the county defendants' motion. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For

---

[1] The Clerk shall correct the spelling of the defendants' names on the docket.

the reasons stated below, the county defendants' motion, treated in part as a motion to dismiss and in part as a motion for summary judgment, is granted in part and denied in part.

## I.    Background

The following facts are taken from Parks's complaint and the evidence submitted by the defendants.

### A.  Conditions and Excessive Force Claims

Parks alleges that, while he was incarcerated at WCDC, Warden Colbourne was aware that Parks had been place on suicide watch four or more times between 2020 and 2021, none of which was for "suicide reasons," and in one of those instances, he was placed there for two weeks. ECF 1-1, at 4. During that two-week period, Parks did not have access to cleaning or hygiene products, and there were feces and urine in the cell where he was held. *Id.* at 4–5.

Parks alleges that he was placed on suicide watch another four times between February 18 and May 7, 2024, once again for "non-suicidal reasons." ECF 1-1, at 5. He states that Jessica, a "mental health" staff member whose last name Parks does not identify, told him that he was placed on suicide watch because he had thoughts of hurting others and impulse control issues. *Id.* Parks complains that he was already in a segregation cell with no way to hurt anyone, so Jessica had no basis to put him on suicide watch. *Id.* Parks claims that, during his placement on suicide watch on May 7, Davis, Russell, and other correctional officers tried to undress him while he was still handcuffed and shackled. *Id.* at 6. Parks further states that Davis cut off his shirt and then instructed Russell to tase him because they could not remove his pants. *Id.* Parks alleges that Russell then tased his right leg and removed his shackles and pants. *Id.*

Davis recalls the tasing incident, which she says occurred on May 3, 2024. ECF 9-4, ¶ 3. According to Davis, Mental Health Counselor Sloane notified her that Parks needed to be placed

on suicide watch due to "a statement he made via the kiosk to Mental Health." *Id.* Davis directed

staff to handcuff Parks, place him in leg irons, and place him on a hallway bench. *Id.* ¶ 4. Davis

then directed Officers Elliott and Purnell to take Parks to the medical unit. *Id.* ¶ 6. In Davis's

recollection, Parks said he was not going on suicide watch because he was not suicidal, and he

tried to pull away from the officers. *Id.* ¶ 6–7. The officers ordered Parks to comply and to stop

resisting. *Id.* ¶ 7. Sgt. Schevel arrived on the scene, pulled and armed her taser, but did not aim it

at Parks. *Id.* ¶ 8. Parks then walked to the suicide cell where he backed up against a wall and

refused orders to remove his clothes, which officers needed him to do so that he could be placed

into a "special suicide suit." *Id.* ¶ 9. Parks threatened the officers several times that he would use

a piece of the bunk to stab one of them. *Id.* ¶ 10. Davis put her hand on Parks's right shoulder to

maintain control and directed Officer Conquest to bring medical shears to cut Parks's clothing off

his body. *Id.* ¶ 11. Parks's shirt was cut off first. *Id.* ¶ 12. Purnell then removed the left leg iron,

but Parks resisted when Purnell attempted to remove the other one. *Id.* ¶ 13. The right leg iron was

eventually removed, *id.*, but Parks refused three orders to lift his foot for the sock to be removed,

*id.* ¶ 14. To gain his compliance, Davis ordered Schevel to use a taser to "drive stun" Parks once.

*Id.* ¶ 15. Schevel tased Parks once in the leg. *Id.* ¶ 16. Parks's socks were removed, Davis dressed

him in a suicide gown, and then Purnell removed the rest of Parks's clothing. *Id.* ¶ 17. Davis then

ordered staff to exit the cell. *Id.* ¶ 18.

**B.  Medical Care Claim**

Parks alleges that he has been prescribed certain medical treatments and that if the

treatments are stopped abruptly, he experiences pain and withdrawal symptoms. ECF 1-1, at 7. He

further alleges that he has been on methadone for three years. *Id.* at 8. Parks alleges that Jhonson

refused to give him his prescribed treatments and denied him methadone or any other medication

to alleviate his pain and withdrawal symptoms. *Id.* at 7. Parks further states that Jhonson and Nurse Melissa, whose last name Parks does not identify, abruptly stopped his methadone without any taper. *Id.* at 8. At some point, Parks was in a fight with another inmate and was placed in lockdown for 25 days. *Id.* While in lockdown, Parks experienced symptoms of methadone withdrawal, including vomiting for weeks, without any medical oversight. *Id.* at 8–9.

### C.  Failure to Protect Claim

Finally, Parks alleges that on or about March 20, 2024, he wrote to Col. Kimball and to WCDC's "In-Tel" unit about weapons present in his housing unit, C-A Pod. *Id.* at 9. Parks had heard that he could receive payment for providing such information, and he "gave up one knife as [a] show of good faith." *Id.* He states that Kimball and the In-Tel unit refused to pay him, so he stopped working for them. *Id.* Parks was then moved from C-A Pod to B-A Pod, and within a day, an inmate assaulted him with a knife. *Id.* Parks asserts that Kimball, Hutt, Elliot, and Blevens knew there was a threat to his safety and took no action to prevent the assault. *Id.* at 10.

## II.    Standard of Review

The county defendants move to dismiss the complaint for failure to state a claim or alternatively for summary judgment. Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v.*

*Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the court must accept the allegations as true and "draw all reasonable inferences in favor of" the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). But the court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require [the court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805

(4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain "enough facts to state a claim for relief that is plausible on its face."'" *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King*, 825 F.3d at 214 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

The court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b).

When the parties present and the court considers matters outside the pleadings on a Rule 12(b)(6) motion, the court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The Court notified Parks that he had the right to respond to the county defendants' motion, that the motion could be construed as one for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond. ECF 10. Moreover, the county defendants' motion, which identifies summary judgment as possible relief, provided sufficient notice for Parks to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). To date, Parks has not filed a response. Still, the Court is satisfied that Parks has been advised that the motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion, in part, under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (citing *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, the court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

## III.    Discussion

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived him or her of a constitutional right. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). The statute "is not

itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Two elements are essential to state a claim under § 1983: (1) the plaintiff must have suffered a deprivation of "'rights, privileges or immunities secured by the Constitution and laws'" of the United States; and (2) the act or omission causing the deprivation must have been "committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 45 n.3, 48 (1988) (quoting 42 U.S.C. § 1983).

### A. Fourteenth Amendment Violations for Placement on Suicide Watch

Parks claims his constitutional rights were violated when he was placed on suicide watch during two detention periods at WCDC, the first in 2020–2021 and the second in 2024. According to Parks, the defendants violated two Fourteenth Amendment rights: the right against cruel and unusual punishment and the right to due process (as set forth in the Eighth and Fifth Amendments, respectively, and applied to pretrial detainees through the Fourteenth Amendment). Specifically, Parks claims that the conditions of confinement while he was on suicide watch amounted to cruel and unusual punishment and that he was placed on suicide watch without due process.

#### 1. Exhaustion of Administrative Remedies

The county defendants assert that the Court cannot consider Parks's constitutional challenges to his placements on suicide watch between February and May 2024 because Parks failed to exhaust his administrative remedies for any alleged constitutional violations during that period. The Court agrees.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate [and pretrial detainee] suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Exhaustion under § 1997e(a) is mandatory. A plaintiff must exhaust their available administrative remedies before the court will hear their claim. *See Ross v. Blake*, 578 U.S. 632, 639 (2016); *Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005). Consequently, if Parks has not properly presented any of his claims through an available administrative remedy procedure, that claim must be dismissed pursuant to the PLRA. *See Ross*, 578 U.S. at 639–40. Administrative exhaustion under § 1997e(a) is not, however, a jurisdictional requirement and does not impose a heightened pleading requirement on the plaintiff. *Jones*, 549 U.S. at 215–16; *see also Burrell v. Shirley*, 142 F.4th 239, 249 (4th Cir. 2025). Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones*, 549 U.S. at 215–16; *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the [detainee] has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"— or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

To properly exhaust administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore*, 517 F.3d at 725. Under this requirement, an inmate

must use "all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

The county defendants do not explain the grievance process at WCDC. Instead, they have submitted Parks's inmate grievances filed between February 18 and July 29, 2024. ECF 9-5. Read generously in Parks's favor, these grievances show that Parks filed a grievance on May 14, 2024 complaining about his placement in lockup and not receiving recreation time and again on May 22, 2024 complaining that the "medical cell" where he was confined lacked hot water, which left him unable to clean a mouth infection. *Id.* at 23, 26. None of the grievances in Parks's file indicates that he complained about his placements on suicide watch during the first half of 2024. Whatever the grievance process at WCDC may be, Parks has not used it to challenge his placements on suicide watch in 2024. Because Parks has not exhausted his administrative remedies, the county defendants are entitled to summary judgment on Parks's claims that his placements on suicide watch in 2024 violated his constitutional rights. *See, e.g., Moss v. Harwood*, 19 F.4th 614, 623 (4th Cir. 2021) (affirming grant of summary judgment to defendants on pretrial detainee's procedural due process challenge to his placement in disciplinary confinement where detainee failed to exhaust administrative remedies as to that claim).

### 2.  Failure to State a Claim

The county defendants also assert that any constitutional claims arising out of Parks's placement on suicide watch before July 29, 2021 must be dismissed for failure to state a claim because they are barred by the three-year statute of limitations. *See Wallace v. Kato*, 549 U.S. 384,

387 (2007) (explaining that the statute of limitations for § 1983 actions "is that which the State provides for personal injury torts"); Md. Code Ann., Cts. & Jud. Proc. § 5-101 (in general, statute of limitations for civil actions is three years). A claim may be dismissed under Rule 12(b)(6) if it clearly appears on the face of the complaint that the claim is barred by the statute of limitations. *Custis*, 851 F.3d at 361; *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). The limitations period begins to run when a claim accrues. *See, e.g., Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 388–89 (4th Cir. 2014); *Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 260 (4th Cir. 2007). A § 1983 claim accrues when a plaintiff "know[s] that he has been hurt and [knows] who inflicted the injury." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *United States v. Kubrick*, 444 U.S. 111, 122–24 (1979)).

Parks filed his complaint on July 22, 2024, the date he certifies that he delivered it to WCDC authorities for mailing. *See Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022) (discussing prison mailbox rule). The only moving defendant charged with violating his constitutional rights relating to his placement on suicide watch is Warden Colbourne. If it is obvious from the face of the complaint that Parks's claims against Warden Colbourne arising from his 2020–2021 placements on suicide watch accrued before July 22, 2021, the Court may dismiss the claims as time-barred. It is not so obvious.

It is clear from Parks's complaint that he knew he was injured in 2020–2021 when he was placed on suicide watch and housed in unsanitary conditions. But it is not clear from the face of the complaint when Parks learned that Warden Colbourne knew about Parks's injuries and failed to intervene. Without any allegations about when Parks learned that the Warden became aware of his injuries, the Court cannot conclude from the allegations in the complaint that Parks's claims against the Warden are barred by the statute of limitations.

Still, Parks's claims relating to his placements on suicide watch during 2020–2021 must be dismissed because Parks fails to state a constitutional violation.[2]

First, Parks does not plausibly allege that his placements on suicide watch violated his right to due process. Determining whether a person's due process rights have been violated entails a "two-step inquiry": The court must assess (1) "[w]hether the person has been deprived of a protected liberty or property interest," and (2) if so, "whether the deprivation occurred without constitutionally sufficient process." *Brown v. Stapleton*, 142 F.4th 252, 255 (4th Cir. 2025) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569–71 (1972); *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015)). Because pretrial detainees have not been convicted and retain a liberty interest in freedom from punishment, "'punitive measures' imposed during pretrial detention intrude on a protected liberty interest." *Dilworth v. Adams*, 841 F.3d 246, 251 (4th Cir. 2016) (quoting *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)). In determining whether procedural protections are constitutionally sufficient to protect this liberty interest, the court must be mindful that "the realities of the prison environment require 'some amount of flexibility' in the due process inquiry," but also that certain minimum procedural protections are required before a pretrial detainee may be punished, namely: notice, a hearing, and "a written statement describing the reasons for the disciplinary action taken." *Dilworth*, 841 F.3d at 254 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)).

The Court assumes, without deciding, that Parks has sufficiently alleged that his placements on suicide watch were punitive and that he thus had a protected liberty interest against being placed there. Parks, however, has not plausibly alleged that he was deprived of that liberty

---

[2] The moving defendants did not seek dismissal on this ground, but the Court must address it because Parks has not prepaid the filing fee. Though 28 U.S.C. § 1915(a)(1) allows an indigent litigant like Parks to commence an action without prepaying the filing fee, the statute requires dismissal of any complaint that is frivolous, malicious, or fails to state a claim on which relief may be granted, *see* 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii), 1915A(b).

interest without sufficient process. Parks alleges only that he was placed on suicide watch for the wrong reasons. He does not provide any information about how WCDC officials decided to place him there, what procedures (if any) they followed in doing so, or how those procedures were deficient. Because Parks fails to allege that he was placed on suicide watch without sufficient process, he fails to state a claim for violation of his due process right.

Second, Parks fails to state a claim that his conditions of confinement amounted to cruel and unusual punishment. Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The protections afforded convicted prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment because due process proscribes punishment of a detainee before a proper adjudication of guilt. *See Bell*, 441 U.S. at 545. A pretrial detainee's challenge to his conditions of confinement is analyzed under the "deliberate indifference" standard. *See Hammock v. Watts*, 146 F.4th 349, 360 (4th Cir. 2025). To state a Fourteenth Amendment claim for deliberate indifference based on conditions of confinement, a pretrial detainee must allege (1) the "deprivation of a human need" that is "objectively sufficiently serious," and (2) that the defendant "acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (first quoting *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997); then quoting *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023)).

Parks has sufficiently alleged that the conditions in which he was confined—a feces- and urine-covered cell—amounted to an objectively serious deprivation of a human need. *See, e.g.*, *Williams v. Griffin*, 952 F.2d 820, 825 (4th Cir. 1991) (verified allegations of overcrowding and unsanitary prison conditions, including urine-coated toilet and sewage-covered floor, sufficient to

raise genuine issue of material fact as to Eighth Amendment claim); *see also McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) ("Not surprisingly, human waste has been considered particularly offensive so that courts have been especially cautious about condoning conditions that include an inmate's proximity to [it].") (internal quotation marks and citation omitted). Parks has adequately alleged the first prong of the deliberate indifference test. *See Hammock*, 146 F.4th at 360.

Parks's claim falters at the second prong. Parks alleges that Warden Colbourne knew about the feces and urine in his cell, but Parks provides no specific facts to support this conclusory allegation. Parks alleges only that he spoke with Warden Colbourne at least one of the times that he was on suicide watch in 2020–2021—about what, he does not say—and that, at some point after Parks was removed from the cell containing feces and urine, Warden Colbourne had the cell cleaned. From these allegations, the Court cannot infer what Parks told Warden Colbourne or what the Warden knew about the conditions of the cell when Parks was in it. Parks does not adequately allege that Warden Colbourne knew or should have known of the unsanitary conditions in Parks's cell before or during the two-week period in which he was confined there. Parks fails to allege that Warden Colbourne was deliberately indifferent to the conditions in which he was confined.

Accordingly, Parks's § 1983 claims pertaining to his confinement on suicide watch during 2020–2021 are dismissed for failure to state a claim.

### B. Excessive Force

The county defendants contend that they are entitled to summary judgment on Parks's excessive force claim. The Court disagrees.

The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." 576 U.S. 389, 397 (2015). "It is enough . . . that a pretrial detainee show that the 'force purposely or knowingly used against him

was objectively unreasonable,' . . . regardless of an officer's state of mind." *Dilworth*, 841 F.3d at 255 (quoting *Kingsley*, 576 U.S. at 397). Pursuant to *Kingsley*, the court must consider whether, under the "facts and circumstances" of this case, and from the "perspective of a reasonable officer on the scene," the force used against Parks was objectively excessive. *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The court also must "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*, 576 U.S. at 397 (quoting *Bell*, 441 U.S. at 540 (brackets in original)).

Parks claims that the use of a taser on him when he was resisting placement on suicide watch was excessive and objectively unreasonable. In *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, the Fourth Circuit held that a police officer may use a taser only when "an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the use of force." 810 F.3d 892, 905 (4th Cir. 2016). There, police officers had repeatedly tased Ronald Armstrong, who was subject to an involuntary commitment order, had wrapped himself around a stop sign post, and refused to move. *Id.* at 896–97. Armstrong died, and his estate sued the officers for excessive force. *Id.* at 897–98. The court determined that, viewing the facts in the light most favorable to the estate, the officers had engaged in excessive force. *Id.* at 906. The court reasoned that although "[n]oncompliance with lawful orders justifies some use of force," the use of a taser constitutes a "serious use of force" that "requires significant circumscription" and cannot be justified in circumstances where a person "presents no serious safety threat." *Id.* at 901–04. It further determined that the officers' tasing of Armstrong was objectively unreasonable because, although Armstrong had ignored a command to

let go of the post and resisted a brief attempt to physically pull him off, he was "stationary, non-violent, and surrounded by [other] people"—meaning that the situation presented a "static impasse" rather than an immediate danger. *Id.* at 901–02.

The *Armstrong* Court analyzed the officers' use of force under the Fourth Amendment because Armstrong was being detained when the officers tased him. *Id.* at 899 (citing *Graham*, 490 U.S. at 388). Parks, by contrast, was a pretrial detainee when he was tased, so his claim of excessive force arises under the Fourteenth Amendment. *Kingsley*, 576 U.S. at 400–02. This difference is immaterial because the standard for evaluating an officer's use of force under both the Fourth and Fourteenth Amendments is one of "objective reasonableness," *Graham*, 490 U.S. at 397; *Kingsley*, 576 U.S. at 397, and both the Supreme Court and the Fourth Circuit have treated these standards as indistinguishable. *See Lombardo v. City of St. Louis*, 594 U.S. 464, 466 n.2 (2021) (per curiam) ("We need not address whether the Fourth or Fourteenth Amendment provides the proper basis for a claim of excessive force against a pretrial detainee in [the decedent's] position. Whatever the source of law, in analyzing an excessive force claim, a court must determine whether the force was objectively reasonable . . . ."); *Somers v. Devine*, 132 F.4th 689, 698 (4th Cir. 2025) ("We do not distinguish between [Fourth and Fourteenth Amendment excessive force] claims as they are functionally identical for the purposes of our analysis; both . . . mandate the use of an objective reasonableness test."). And the Fourth Circuit has explained that *Kingsley* "extended the Fourth Amendment's objective reasonableness standard [as set forth in *Graham*] to excessive force claims by pre-trial detainees." *Brooks v. Johnson*, 924 F.3d 104, 114 n.4 (4th Cir. 2019). Indeed, many of the factors that *Kingsley* identified as bearing on the objective reasonableness of a use of force under the Fourteenth Amendment—including whether the plaintiff was actively resisting, the threat that the officer reasonably perceived, and the severity of the

security problem posed by the plaintiff—are identical or analogous to the *Graham* factors. *See Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396). Thus, although *Armstrong* determined that the use of a taser was objectively unreasonable under the Fourth Amendment, its reasoning is instructive in resolving Parks's Fourteenth Amendment excessive force claim, given the "functionally identical" character of the inquiry. *See Somers*, 132 F.4th at 698; *see also Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 195 n.6 (3d Cir. 2021) ("courts applying the objective standard in the Fourteenth Amendment context may find useful guidance in Fourth Amendment excessive-force cases").

Here, Parks alleges that Davis ordered Russell to tase him and that the use of the taser was excessive. The county defendants do not dispute that Davis ordered that Parks be tased, *see* ECF 9-1, at 5, and there is ample evidence in the record (including Davis's own affidavit) that she did. *See, e.g.,* ECF 9-4, at 4; ECF 9-5, at 33, 38. The county defendants argue, however, that the record does not establish that Russell was the officer who tased Parks on Davis's orders and that, even if Russell did tase Parks, the use of the taser was not objectively unreasonable. The Court is not persuaded.

First, there is a genuine dispute of fact about who tased Parks. One of the reports about the tasing incident identifies Russell as the officer who tased Parks. ECF 9-5, at 43. Davis, on the other hand, says that Schevel, who is not a named defendant, tased Parks. ECF 9-4, at 4. And Elliott, in his report about the tasing incident, also says that Schevel tased Parks. ECF 9-5, at 33. On the record before the Court, a reasonable jury could conclude that Russell, not Schevel, tased Parks.

Second, a reasonable jury also could conclude that Parks was subjected to objectively unreasonable force. Though there is evidence that Parks threatened to "stab" one of the officers with a piece of a bunk—which, if believed, could suggest the use of a taser was reasonable—there

is other evidence that Parks was surrounded by seven officers and restrained in handcuffs (possibly even leg irons) at the time he was tased. *See, e.g.*, *id.* at 38 (report stating that, after being tased, Parks was ordered to "place his hands through the food slot so that his handcuffs could be removed"), 43 (report identifying officers involved and stating that Parks was ordered to lift his leg "so [the correctional officers] could remove [his] leg irons"). If believed, this evidence could suggest that Parks's threat was not plausible or that the officers could not have reasonably perceived he would harm them. Moreover, though there is evidence that Parks refused several orders to lift his leg, there is no evidence that he made any sudden movements, violently struggled with the officers, or attempted to attack them. From this evidence, a reasonable jury could view Parks's resistance to the orders as more passive than active. Under such circumstances, when a person "presents no serious safety threat," the use of a taser—a "serious use of force" that "requires significant circumscription"—is not justified. *Armstrong*, 810 F.3d at 902–04. When the facts are viewed in the light most favorable to Parks, a reasonable jury could conclude that Parks did not pose an imminent danger to the officers that would warrant the use of a taser and that, instead, the situation presented a "static impasse" of the sort that the Fourth Circuit found insufficient to justify the serious use of force. *See id.* at 902.

Because there are genuine disputes of material fact about whether the use of a taser was objectively unreasonable, the county defendants are not entitled to summary judgment on Parks's excessive force claim. The claim may proceed against Davis and Russell.

### C.  Failure to Protect

The county defendants next assert that Parks's failure to protect allegations must be dismissed for failure to state a claim. The Court agrees.

To state a claim for failure to protect from attack by another detainee, a pretrial detainee must allege two elements. First, the detainee must allege that the defendant officer exposed him "to an objectively 'substantial risk of serious harm.'" *Younger v. Crowder*, 79 F.4th 373, 382 (4th Cir. 2023) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). On this element, the Court must "assess whether society considers the risk that the [detainee] complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Second, the detainee must allege the defendant officer's "deliberate indifference to a serious risk of harm on the purely objective basis that the 'governmental action' [that the plaintiff challenges] is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Short*, 87 F.4th at 611 (quoting *Kingsley*, 576 U.S. at 398). For the second prong, the detainee must allege "that the defendant's action or inaction was . . . 'objectively unreasonable,'. . . that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." *Id.* (quoting *Kingsley*, 576 U.S. at 397). "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer*, 511 U.S. at 836). It is not enough, however, "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611–12.

Parks does not state a failure to protect claim. Parks does not allege that the county defendants were aware that the inmate who assaulted him posed a risk to Parks's safety. Though Parks states that Kimball, Hutt, Elliot, and Blevens were aware of the risk, Parks provides no facts to support this conclusory allegation. He does not claim to have told the defendants that this inmate posed a threat to him; nor does he indicate how they would otherwise have known of any such

risk. Parks alleges he informed Kimball there were knives on his housing unit, but he does not allege that he knew the inmate who assaulted him had a knife or that he told Kimball (or anyone) that this inmate had a knife. Consequently, Parks has not sufficiently alleged the second prong of a failure to protect claim. This claim against Kimball, Hutt, Elliot, and Blevens is dismissed.

### D.  State Law Claims

Parks also alleges state law claims. In particular, he claims that Warden Colbourne and Jessica committed unspecified torts against him in connection with his placement on suicide watch. He also alleges that Davis and Russell committed assault and battery against him when Russell tased him on Davis's orders.

Parks's unspecified tort claims against Warden Colbourne and Jessica are dismissed for failure to state a claim. Parks does not identify any specific tort that Warden Colbourne or Jessica committed against him. Though the Court is mindful of its obligation to construe Parks's allegations liberally, it need not speculate as to his "unexpressed intent," *see Williams*, 716 F.3d at 801 (quoting *Laber*, 438 F.3d at 413 n.3), or identify claims for him that he has not pleaded.

 Parks's assault and battery claims against Davis and Russell, however, may proceed. Under Maryland law, a person is liable for battery when the person "intends a harmful or offensive contact with another without that person's consent." *Est. of Green v. Annapolis*, 696 F. Supp. 3d 130, 169 (D. Md. 2023) (quoting *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999)). "A person may be . . . liable as a principal for . . . battery if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort." *Duke v. Feldman*, 226 A.2d 345, 347 (Md. 1967).

Here, Parks alleges that Davis ordered Russell to tase him and that Russell did so. Viewing Parks's allegations in the light most favorable to him, the Court concludes that he has plausibly

alleged a harmful or offensive contact—tasing. *See Armstrong*, 810 F.3d 902 (observing that a taser "inflicts a painful and frightening blow" (quoting *Orem v. Rephann*, 523 F.3d 442, 448 (4th Cir. 2008)). The Court also concludes that Parks has plausibly alleged that, without his consent, Davis directed this harmful contact and Russell intentionally and directly perpetrated it on his person.

Similarly, Parks has plausibly alleged assault. An assault under Maryland law is "any unlawful attempt to cause a harmful or offensive contact with the person of another or to cause an apprehension of such a contact." *Watson v. Peoples Sec. Life Ins. Co.*, 588 A.2d 760, 767 (Md. 1991) (quoting *Continental Cas. Co. v. Mirabile*, 449 A.2d 1176, 1183 (Md. Ct. Spec. App. 1982)). "For the 'apprehension' element to be satisfied, the plaintiff need not be in fear; the plaintiff need only have a 'reasonable apprehension of an impending battery.'" *Head v. Rakowski*, 695 F. Supp. 3d 663, 685 (D. Md. 2023) (quoting *Lamb v. State*, 613 A.2d 402, 437–38 (Md. Ct. Spec. App. 1992)). Like battery, "[a] person may be . . . liable as a principal for assault . . . if he . . . encouraged, incited, aided or abetted the act of the direct perpetrator of the tort." *Duke*, 226 A.2d at 347.

Parks alleges that Davis ordered the tasing, that Russell tased him without his consent, and that the tasing was harmful. From these allegations, the Court can plausibly infer that Davis caused Parks to have a reasonable apprehension of an impending battery when Davis ordered Russell to tase him as officers tried to remove the clothes he was wearing.

The county defendants move for summary judgment on Parks's assault and battery claims. However, they do not analyze these claims in their motion. They do not discuss the elements of assault or battery under Maryland law; they do not explain how the evidence shows that Parks's assault and battery claims fail as a matter of law; and they do not cite to portions of the record to

support their position. As summary judgment movants, the county defendants bear the burden of establishing that there is no genuine dispute as to any fact material to Parks's assault and battery claims and that they are entitled to judgment as a matter of law. They have not done so. Moreover, if the county defendants contend that they are entitled to summary judgment on Parks's assault and battery claims because Davis and Russell used objectively reasonable force against him, the Court has already concluded that a reasonable jury could find that their use of force was excessive. The county defendants are not entitled to summary judgment on Parks's assault and battery claims.

The motion to dismiss or for summary judgment on the assault and battery claims is denied. Parks's assault and battery claims against Davis and Russell may proceed.

## IV.    Conclusion

For the foregoing reasons, the county defendants' motion to dismiss or, alternatively, for summary judgment is denied as to Parks's excessive force claim under § 1983 and his state law assault and battery claims against Davis and Russell.

The county defendants' motion is otherwise granted. Specifically, the county defendants are entitled to summary judgment on Parks's claim that his placements on suicide watch between February and May 2024 violated his right to be free from cruel and unusual punishment and his right to due process. The following claims are dismissed without prejudice because Parks has not stated a claim: the claim that the placements on suicide watch in 2020–2021 violated his right to be free from cruel and unusual punishment and right to due process; the failure to protect claim against Kimball, Hutt, Elliot, and Blevens; and the unspecified torts against Warden Colbourne and Jessica.

Parks must notify the Court by October 17, 2025 whether he wishes to pursue his excessive force, assault, and battery claims against Davis and Russell. If Parks notifies the Court by that

deadline that he wishes to pursue these claims, Davis and Russell are directed to file a response to the complaint by November 17, 2025.

A separate Order follows.

Date: September 22, 2025

_____
Deborah L. Boardman
United States District Judge

23